CARMEN FERNÁNDEZ LÁTIMER, Plaintiff and Appellee, v. FRANCES LALOMA, Defendant and Appellant, and HEIRS OF MIGUEL ECHEVARRÍA NAVARRO, Defendants and Appellees.

No. 7655. Argued May 4, 1939.—Decided March 19, 1940.

*Leopoldo Feliú* for appellant.  *R. Castro Fernández* for plaintiff and appellee.  *Luis Tirado Géigel* for appellee heirs.

Mr. Justice Wolf delivered the opinion of the court.

To buy a house from Mr. Waldemar E. Lee, Miguel Echevarría Navarro borrowed $4,200 from Carmen Fernández Látimer. According to agreement the title was to be taken in the name of Josefa Echevarría Navarro (the debtor's sister) until he had paid the debt. If Miguel paid, Josefa, the nominal owner, would convey title to him. If Miguel Echevarría (whose business affairs were somewhat involved) could not repay the purchase money, Josefa Echevarría would convey title to the lender. Josefa accepted these conditions, at least verballly, and also the one that she should draw a will in favor of her nephews, Echevarría's children, in order that they might follow the terms of the agreement in case of her death. Accordingly, in a deed of transfer of the property in question dated March 13, 1931, she appears as buyer. The agreement was oral and none of it appears in the deed. Full and complete ownership of Josefa Echevarría over the property was recorded in the registry. On April 17, 1931, she executed a will in favor of Echevarría's children which, so far, was what she had agreed to do.

The whole affair apparently was a family transaction. Carmen Fernández Látimer, the plaintiff who lent the money, is a sister of Echevarría's wife. She lent the money without a fixed term for recovery and apparently without interest. It was a condition of the agreement that Echevarría and his family would take possession of the house and live in it, paying taxes and making repairs, until the debt was paid, when Echevarría would take title, or if it became evident that he

could not pay the debt, then it would become the duty of Josefa to convey to Carmen who would then become owner. Title was not taken in Echevarría's name because evidently both parties feared that in such a case the house might be attached by a creditor and the lender would have no means of recovering the debt from her brother-in-law. Josefa Echevarría was chosen as nominal owner, because she was Echevarría's sister and had no forced heirs.

Echevarría died on September 25, 1931, insolvent, and without having paid the $4,200 back to his sister-in-law.

Josefa Echevarría, the nominal owner, died on June 13, 1934, but never conveyed title to the plaintiff, although requested to do so. It then transpires that on February 20, 1932, Josefa Echevarría executed a second will, revoking the first, and appointing as her sole heir the defendant Frances Laloma. The plaintiff Carmen Fernández had notice of this fact on May 21, 1935. She filed a complaint three days later and recited all the foregoing facts.

The bill contained an averment that Frances Laloma was aware of all the facts. The plaintiff prayed the lower court:

To decree that Josefa Echevarría Navarro took title to the property in trust for the benefit of the plaintiff and of Miguel Echevarría.

To order the Registrar of Property of San Juan to modify the fifth entry of said property and to record that Josefa Echevarría's interest is as fiduciary.

To decree that Frances Laloma acquired no interest in the aforesaid property as heir of Josefa Echevarría.

To order the cancellation of any entry made in the Registry in favor of Frances Laloma.

To decree that the plaintiff is the sole owner of the property aforesaid and to order the Registrar of Property to record it in the plaintiff's name; or else, to name a substitute trustee and order him to convey the title of said farm to the plaintiff, in accordance with the agreement.

To grant to the plaintiff any other remedy at law or equity that this court believed just and reasonable to the end of protecting the plaintiff's rights.

To grant costs to the plaintiff.

The defendant Succession of Miguel Echevarría filed an answer, admitting all the facts of the complaint and stating that they repudiated Echevarría's inheritance.

The defendant Laloma demurred upon the following grounds: That the complaint showed no cause of action; that the action was barred by the statute of limitations; and that the action was barred by sections 1258 and 1257 of the Civil Code.

Under the demurrer the recited facts must be taken as true.

After the filing of briefs the court on January 7, 1935, sustained the demurrer and, holding that the complaint was not amendable, rendered judgment dismissing the complaint. The lower court said that trusts in Puerto Rico, *inter vivos* or when created upon real property, have to be express and appear from a public deed (section 836, 838, Civil Code) and secret trusts are forbidden (section 844, id.). The court held that resulting or constructive trusts did not exist in Puerto Rico: that rather they were forbidden (section 855), and that equity, as a system of law, did not exist in Puerto Rico.

The court at the time went on to hold that the elements. for a *"fideicomiso"* or trust did not exist.

The plaintiff moved for a reconsideration.

On April 17, 1936, the court granted the motion. The resolution and judgment rendered January 7 were set aside. and a new order was entered overruling the demurrer. On reconsideration the lower court said:

"We ratify what we have said before (in the resolution of January 7) with the exception of the last paragraph (*supra*) which we accept is mistaken because we have failed to apply the rule of section. 7 of the Civil Code (1930 ed.) which in its pertinent part says as. follows:

"'Section 7.—   .     .      .      .      .      .      .      .

" 'When there is no statute applicable to the case at issue the court shall decide in accordance with equity, *which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration.'* (Italics supplied.)

"This does not mean that the rules of law that arose from the Chancellor's Court of England are applicable to Puerto Rico. As the rule copied very clearly says, the equity of our Civil Code 'means that *natural justice as embodied in the general principles of jurisprudence and in accepted and established usages .and customs* shall be taken into consideration.'

" . . . . . . . . . .

"As appears from the complaint, Josefa Echevarría never was the owner of the property although the title stood in her name. Under such conditions she could convey nothing to her heir, and in trying so to do she did but betray the faith placed in her by her brother and his sister-in-law, the plaintiff. To allow the defendant to retain the title to the property which belongs to her neither morally nor legally, is equivalent to sanction a fraud and to permit a party to enrich herself tortiously at the expense of another, which is loathsome to natural reason, to conscience and to the general principles of law. To prevent cases like the one shown by the complaint, there being no written law to rule them, resort must be had to Section 7 of the Civil Code and judgment rendered, not necessarily according to the rules of the Equity Jurisprudence which are in force in the United States and England, but taking into consideration *the natural justice and the general principles of jurisprdence* as decreed by the aforementioned precept. And so doing, we reach the conclusion that the relation between Josefa Echevarría and the plaintiff was that of agent and principal, respectively, and as the agent cannot himself possess the property entrusted by his principal against his instructions, and now that Josefa is dead, her heir, the defendant Laloma, has the duty of returning the property entrusted to her once the condition arrived which had to be fulfilled before title could be conveyed to the plaintiff was performed. The condition was performed from the moment Echevarría died without being able to repay the loan. Such was the procedure of our Supreme Court in the recent case of *McCormick* v. *González et al.,* decided January .27 last (49 P.R.R. 460) from whose opinion we take the following paragraph:

" 'In the instant case, according to the averments of the complaint, the subscribers delivered their money to González, Fabián and Riera for a common purpose: the acquisition of the corporeal and incorporeal property of the railroad companies. That was the only purpose for which the money was delivered to the three gentlemen aforementioned. The applicable principle is just the same, in acordance with the natural reason and the general principles of law. The assential thing is that a fiduciary relation arises, both in the civil as in the mercantile order, as it happens in the instant case, wherein according to the averments, money was delivered for a certain purpose and was disposed of for particular purposes by the persons in charge of executing the will of the subscribers. We take these reasons as basis to hold that the facts seth forth in the complaint state a cause of action.'

"For the above reasons we reach the conclusion that the complaint shows facts enough for a cause of action and in deciding the opposite in our decree of January 7 last, we committed error, which we now amend, vacating the aforementioned decree and the judgment of the same date, and in its stead the demurrer is overruled and the defendant Laloma is granted a term of ten days to file her answer."

No other action was taken by any of the parties for more than a year. Then, on July 7, 1937, the defendant Laloma moved for judgment on the pleadings.

On October 4, 1937, the lower court rendered judgment on the pleadings in favor of the plaintiff and held that Josefa Echevarría was never owner of the aforesaid property, and that conversely she took title in *trust* for the pailntiff and for Miguel Echevarría; that the conditions of the trust were those shown in the complaint; that the defendant Frances Laloma, testamentary heir of Josefa Echevarría, did not acquire said property, because it did not belong to her testatrix; that the plaintiff is the owner of the aforesaid property in full title and without any condition, inasmuch as Miguel Echevarría died without repaying the loan; that once the judgment is final the secretary will issue a writ to the registrar to cancel any entry made in favor of Frances Laloma as heir of Josefa Echevarría, and to order the record of the title to such property in the name of the plaintiff; and that

costs be awarded to the plaintiff, including $200 for attorney's fees to be paid by the defendant Laloma.

The defendant Laloma appealed, and assigned nine errors. The issues raised by the appellant are the following:

A.—The complaint shows no cause of action because:

1.—Trusts *inter vivos* or over real estate can only be created by public deed.

2.—Any other kind of trust cannot be enforced by law.

3.—Under the facts of the case neither a resulting nor a constructive trust arose inasmuch as there was no fraud at the time of the contract and the failure of the grantee to perform an oral agreement, entered into in good faith is not fraud.

4.—The purpose of the plaintiff and of Miguel Echevarría was to hide their property from creditors. Josefa Echevarría was an innocent party to this contract. Under such conditions the guilty parties cannot recover from the innocent one.

5.—The defendant is an heir and not an original party to the contract. According to Section 371 of the Civil Code she cannot be prejudiced.

B.—The action is barred by the statute of limitations because:

This is an action to annul or rescind the contract by which the defendant's predecessor Josefa Echevarría took title. That contract was executed March 13, 1931. The complaint was filed May 24, 1935, four years and two months later. Sections 1253 and 1251 of the Civil Code fix terms of four years for the respective actions.

C.—The plaintiff is estopped from bringing this cause of action.

Section 1258 of the Civil Code says:

> "If the fact of which the illicit consideration consists does not constitute either a crime or misdemeanor, the following rules shall be observed:
>
> ".    .    .    .    .    .    .    .    .
>
> "When only one of the contracting parties is guilty, he can not recover what he may have given by virtue of the contract, nor demand the fulfilment of what may have been offered him. The other party, who has had nothing to do with the illicit consideration, may reclaim what he may have given without being obliged to fulfill what he has offered."

The illicit consideration undoubtedly was the alleged promise of the grantee. The guilty party was the plaintiff, who acted with the idea of defrauding Echevarría's creditors.

D.—Costs should not have been imposed upon the defendant because she has acted in good faith and the case in issue is a new one in this jurisdiction.

■ The appellant's arguments are that trusts in Puerto Rico have to be express when they are *inter vivos* or related to real estate.

Section 836, Civil Code says:

"A trust *inter vivos* must be constituted by public deed."

Section 838, Civil Code, says:

" 'A trust upon real property must be constituted by public deed, and such public deed must be recorded; and it shall affect third parties only after the date of its entry in the records of the public registry in conformity with the provisions of section 1181 of this Code."

Section 844, Civil Code, says:

"Secret trusts are prohibited."

"Where there are statutes regulating trusts, a trust, to be valid, must be created in accordance with their provisions." 65 C. J. (Trusts), sec. 31, p. 243.

The appellant cites many cases to sustain her points and also a note in 35 A.L.R. 288.

She also says that under the facts of the case neither a resulting nor a constructive trust arises.

The appellant, though bound to accept the facts of the complaint, argues that she is not deprived of her status as third party in regard to the agreement entered into by her predecessor; that the words of the complaint that she "knows that the aforesaid Josefa Echevarría Navarro never was the real owner of the aforementioned property" do not charge her with knowledge of the trust.

She also argues that if this is an action to annul a contract, it is barred by the statute of limitations according to section 1253 of the Civil Code. And that if it is an action to rescind a contract it is also barred by section 1251 which provides:

"The action asking rescission must be brought within four years.

"For persons subject to guardianship and for absentees, the four years shall not commence until the incapacity of the former has ceased to exist, or the domicile of the latter is known."

She maintains besides that although Josefa drew up the second will on February 20, 1932, about three years before the action was taken, the plaintiff did nothing to protect her rights; and that after the grantee's death ten months elapsed before the complaint was filed. She says that although Echevarría died on September 25, 1931, two years and nine months before the supposed trustee died, no step was taken by the plaintiff to claim her alleged rights; that she had time to act and did not choose to do so, and prescription has extinguished her claim.

The appellant cites section 1257 of the Civil Code to support her contention that the plaintiff, having been guilty, is estopped from bringing action.

The appellant maintains that she should not have been mulcted in costs.

Appellee attempts to meet the position of appellant with various arguments. She relies on *McCormick* v. *González Martínez, supra,* which she quotes extensively.

She also quotes Corpus Juris, vol. 65, p. 222, section 13, upon Resulting Trusts, and p. 45, section 215, upon Constructive Trusts.

She accepts that the trust cannot be enforced as an express trust, but maintains that it can be as a resulting trust.

The case could be decided under section 7 of the Civil Code by taking the rules about resulting or constructive trusts from equity and applying them. In equity jurisdictions a constructive trust arises in cases similar to the one at bar. For a comprehensive study of the point see two articles in Harvard Law Review "Constructive Trusts based upon the Breach of an Express Oral Trust of Land," 20 H.L.R. 549, and "Resulting Trusts Arising upon the Purchase of Land," 40 H.L.R. 669.

■■ Despite the fact that we may rely on the *McCormick* case and others for the idea that Frances Laloma and her predecessor in title held a property as a resulting or constructive trust, yet we do not think that we need to wander outside of our Civil Code to support the judgment of the court below.

It is clear to our minds that Josefa Echevarría and her devisees were, as indicated by the court below, agents both of Carmen Fernández and Miguel Echevarría. As such agents they were bound in case of the payment of a debt, to convey the property to Miguel Echevarría or his heirs, and in case the debt was not paid, to convey the property to Carmen Fernández, in payment of the loan which Miguel Echevarría had obtained from the latter to buy the property of Mr. Lee.

Potentially then Josefa Echevarría had an alternative mandate.

Section 1612 of the Civil Code (1601 of the 1930 ed.) provides:

"An agency may be express or implied. An express agency may be given by a public or private instrument and even by parol.

"The acceptance may also be express or implied, the latter being inferred from the acts of the agent."

It immediately becomes evident that the agency of Josefa Echevarría was express. That she accepted it was proved by the first will that she made in favor of her nephews, the children of Miguel Echevarría. Apparently as it was a family matter everybody understood what was to be done and the facts that are in the complaint are not in any way controverted, and especially not the fact that Josefa Echevarría and Frances Laloma knew what the terms of the agency were.

Section 1616 (1605, 1930 ed.) provides as follows:

"An agent can not exceed the scope of his authority."

Force is lent to the view that this case may be settled under the principle of agency by the fact that we can not sup-

pose that a condition of this sort could not be remedied in Spanish times if similar facts had then occurred.

Frances Laloma may have thought that she had some sort of a claim or other justification for her act, but she had no claim, and there is no suggestion of any, against Carmen Fernández. It makes no difference that the deed was made and recorded in favor of Josefa Echevarría without condition. Any number of cases may be imagined where an agent, deservedly trusted by his principal, would take title in his own name in a piece of property because it would be more convenient to everybody that he should do so. There is a prohibition in the Civil Code against agents acquiring property of their principals, but this principle yields to the agreement of principal and agent that it should be done that way. *Modus et conventio vincunt legem.*

There is nothing, in our opinion, to show that Miguel Echevarría's creditors were defrauded. We do not believe Echevarría would have a cause of action. But the plaintiff undoubtedly has. It has not been shown that she had any creditors, but as the defendant herself says, "Good faith should be presumed."

▉ The defendant-appellant alleges that she is a third party because she is an heir and has no knowledge of the facts of the agreement nor was she party to it. She seems to forget that the complaint says that "the defendant has knowledge that the aforesaid Josefa Echevarría Navarro was never the real owner of the aforementioned property, never took possession thereof, never had any interest thereon, never invested any money nor received rents or moneys for the use thereof, and that she only retained the title of the aforementioned property with the purpose and to the end aforesaid."

If she knew that her predecessor only retained the title of the property for the purpose and end mentioned, she had knowledge of the agency and the argument is frivolous.

Besides, she was not a third party because she was an heir and did not take by any lucrative title.

■ This is not an action to rescind or annul a contract. On the contrary, the lower court enforced the contract, as a resulting trust.

But as an action to recover the land it is not barred by limitation. According to the facts of the complaint, Josefa Echevarría Navarro died on June 13, 1934, without having conveyed title to the plaintiff notwithstanding that she had been requested to do so. And she drew up a new will on February 20, 1932, "without the plaintiff's knowledge or consent" and the plaintiff only had knowledge of that fact the 21st of May, 1935. The complaint is dated the 23rd and was filed the 24th.

In *McCormick* v. *González Martínez et al., supra,* this Supreme Court held that a case of this kind is regulated by Section 1864 of the Civil Code. Limitations run after 15 years.

■ The appellant's arguments as to estoppel are the same which have been discussed before. There is nothing to show that there was an illicit consideration in the original agreement. If there was, nothing shows that the guilty party was the plaintiff. On the contrary, she appears to have loaned a sum of money, without interest and without a fixed time of payment, and on a slight security: her trust on the defendant's predecessor. The title holder broke the faith deposited with her. We see no valid reason why the plaintiff should not recover or why the defendant should enrich herself unjustly.

■ The appellant's contention that the plaintiff is estopped from bringing action because if the contract was a fraud she is *in pari delicto,* has no merit. The contract was not made to defraud the vendor of the house, because he was paid; to defraud Echevarría's creditors, because he had no equity in the property and never acquired any; and certainly not to defraud Echevarría, Josefa Echevarría or Car-

men Fernández. The contract resulted in an attempt by Josefa Echevarría to retain property with which she had been entrusted by her principals; but the maxims *In pari delicto potier est conditio defendentis,* and *Ex dolo malo non oritur actio,* do not apply in this case. As we said in *Saavedra* v. *Saavedra,* 46 P.R.R. 226, 227:

"The maxims above referred to are rather more applicable to cases where the immediate transaction between the parties was fraudulent, not to some collateral result."

As to the costs, we do not think that we should interfere with the discretion of the lower court.

The judgment appealed from should be affirmed.